IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOSE GUADALUPE VILLANUEVA,

        Plaintiff,                No. 2:06-cv-2706 LKK KJN P

      vs.

STATE OF CALIFORNIA, et al.,

        Defendants,           FINDINGS AND RECOMMENDATIONS

_____/

I.  Introduction

        Plaintiff, a state prisoner proceeding without counsel, seeks relief pursuant to 42 U.S.C. § 1983.  This case is proceeding on the third amended complaint, filed August 21, 2008.  Plaintiff alleges that defendants Kromann, Traquina, Rallos, Noriega, and Basi were deliberately indifferent to plaintiff's serious medical needs, and that defendant Tran was deliberately indifferent to plaintiff's serious medical needs and retaliated against plaintiff.  Pending before the court is the motion for summary judgment filed by defendant Basi; and the motion to dismiss filed by defendants Kromann, Noriega, Rallos, Traquina and Tran.  Plaintiff filed an opposition to defendant Basi's motion for summary judgment on August 19, 2010.  Plaintiff has not filed an opposition to defendants' motion to dismiss plaintiff's claims as unexhausted.  Counsel for all defendants have filed a reply.  As explained more fully below, the

1

court recommends that the motion to dismiss by defendants Kromann, Noriega, Rallos, Traquina and Tran be denied, and defendant Basi's motion for summary judgment be granted.

II.   Motion to Dismiss Defendants Kromann, Noriega, Rallos, Traquina and Tran

Defendants Kromann, Noriega, Rallos, Traquina and Tran aver that plaintiff failed to exhaust his administrative remedies prior to the filing of the instant action.  Plaintiff failed to oppose this motion.  Because this court recommends denial of the motion, plaintiff was not granted additional time to oppose the motion to dismiss.

A.   Legal Standard re Exhaustion

The Prison Litigation Reform Act of 1995 ("PLRA") amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a). Exhaustion in prisoner cases covered by § 1997e(a) is mandatory.  Porter v. Nussle, 534 U.S. 516, 524 (2002).  Exhaustion is a prerequisite for all prisoner suits regarding conditions of confinement, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.  Porter, 534 U.S. at 532.

Exhaustion of all "available" remedies is mandatory; those remedies need not meet federal standards, nor must they be "plain, speedy and effective."  Id. at 524; Booth v. Churner, 532 U.S. 731, 740 n.5 (2001).  Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit.  Booth, 532 U.S. at 741.  A prisoner "seeking only money damages must complete a prison administrative process that could provide some sort of relief on the complaint stated, but no money."  Id. at 734. The fact that the administrative procedure cannot result in the particular form of relief requested by the prisoner does not excuse exhaustion because some sort of relief or responsive action may result from the grievance.  See Booth, 532 U.S. at 737; see also Porter, 534 U.S. at 525 (purposes of exhaustion requirement include allowing prison to take responsive action, filtering out

2

1    frivolous cases, and creating administrative records).

2           A prisoner need not exhaust further levels of review once he has either received

3    all the remedies that are "available" at an intermediate level of review, or has been reliably

4    informed by an administrator that no more remedies are available.  Brown v. Valoff, 422 F.3d

5    926, 934-35 (9th Cir. 2005).  Because there can be no absence of exhaustion unless some relief

6    remains available, a movant claiming lack of exhaustion must demonstrate that pertinent relief

7    remained available, whether at unexhausted levels or through awaiting the results of the relief

8    already granted as a result of that process.  Brown, 422 F.3d at 936-37.

9           As noted above, the PLRA requires proper exhaustion of administrative remedies.

10   Woodford v. Ngo, 548 U.S. 81, 83-84 (2006).  "Proper exhaustion demands compliance with an

11   agency's deadlines and other critical procedural rules because no adjudicative system can

12   function effectively without imposing some orderly structure on the course of its proceedings."

13   Id. at 90-91.  Thus, compliance with prison grievance procedures is required by the PLRA to

14   properly exhaust.  Id.  The PLRA's exhaustion requirement cannot be satisfied "by filing an

15   untimely or otherwise procedurally defective administrative grievance or appeal."  Id. at 83-84.

16          The State of California provides its prisoners the right to appeal administratively

17   "any departmental decision, action, condition or policy which they can demonstrate as having an

18   adverse effect upon their welfare."  Cal. Code Regs. tit. 15, § 3084.1(a) (2010).  It also provides

19   prisoners the right to file appeals alleging misconduct by correctional officers and officials.  Id. at

20   § 3084.1(e).  In order to exhaust available administrative remedies within this system, a prisoner

21   must proceed through several levels of appeal:  (1) informal resolution, (2) formal written appeal

22   on a 602 inmate appeal form, (3) second level appeal to the institution head or designee, and

23   (4) third level appeal to the Director of the California Department of Corrections and

24   Rehabilitation.  Barry v. Ratelle, 985 F.Supp. 1235, 1237 (S.D. Cal. 1997) (citing Cal. Code

25   Regs. tit. 15, § 3084.5).  A final decision from the Director's level of review satisfies the

26   exhaustion requirement under § 1997e(a).  Id. at 1237-38.

1    Non-exhaustion under § 1997e(a) is an affirmative defense which should be

2  brought by defendants in an unenumerated motion to dismiss under Federal Rule of Civil

3  Procedure 12(b).  Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003).  Moreover, the court

4  may look beyond the pleadings to determine whether a plaintiff exhausted his administrative

5  remedies.  Id. at 1119-20.

6    B.  Analysis

7    Pursuant to the mailbox rule, plaintiff constructively filed the original complaint

8  in this action on October 31, 2006.[1]  The complaint was file-stamped by the Clerk of Court on

9  November 29, 2006.  However, this action is proceeding on the third amended complaint

10  ("TAC"),[2] constructively filed August 13, 2008, and file-stamped on August 21, 2008.  (Dkt. No.

11  42.)

12    On September 8, 2010, after the filing of the instant motion, the Ninth Circuit held

13  that the PLRA's exhaustion requirement is satisfied for new claims asserted in an amended

14  complaint as long as the plaintiff exhausted his administrative remedies with respect to the new

15  claims before he tendered the amended complaint to the court for filing.  Rhodes v. Robinson,

16  621 F.3d 1002, 1007 (9th Cir. 2010).  The Ninth Circuit acknowledged two cases: McKinney v.

17  Carey, 311 F.3d 1198 (9th Cir. 2002) (exhaustion is a prerequisite to suit); and Vaden v.

18  Summerhill, 449 F.3d 1047 (9th Cir. 2006) (a case is "brought" within the meaning of § 1997e at

19  the time it is tendered to the district court).  However, the court held that both McKinney and

20  Vaden must be "read and applied in the larger context of the pleading framework established by

21

22    [1] See Houston v. Lack, 487 U.S. 266, 275-76 (1988) (pro se prisoner filing is dated from
the date prisoner delivers it to prison authorities); Douglas v. Noelle, 567 F.3d 1103, 1109 (9th
23  Cir. 2009) (holding that "the Houston mailbox rule applies to § 1983 complaints filed by pro se
prisoners").
24
    [2] Plaintiff has provided exhibits to the TAC, which includes various health care services
25  request forms from 2007 and 2008.  (Dkt. No. 42.)  On September 22, 2008, plaintiff filed
additional exhibits, some of which are duplicates of the exhibits appended to the TAC.  (Dkt. No.
26  44.)

1   the Federal Rules of Civil Procedure." Rhodes, 621 F.3d at 1005.  Under the Federal Rules, as a

2   general rule, when a plaintiff files an amended complaint, "[t]he amended complaint supercedes

3   the original, the latter being treated thereafter as non-existent," and thus its filing date is

4   irrelevant.  Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1976).

5          In the instant action, the motion to dismiss based on plaintiff's failure to exhaust

6   his administrative remedies prior to filing the instant action, and defendants' subsequent reply,

7   were both filed prior to the ruling in Rhodes.  Defendants Kromann, Noriega, Rallos, Traquina

8   and Tran provided records concerning inmate appeals for the time period June 22, 2004, through

9   November 29, 2006.  (Dkt. No. 72-3 at 2; 72-4 at 1.)  Plaintiff confirmed in his deposition that

10  the TAC is limited to events that occurred, and medical treatment received, after he had left knee

11  surgery[3] on August 17, 2007.  (Dkt. No. 73 at 34, 35-36, 38-39.)  However, defendants have not

12  submitted any evidence concerning inmate appeals for the period November 30, 2006, through

13  August 13, 2008.

14         Therefore, without evidence to determine whether plaintiff's claims against

15  defendants Kromann, Noriega, Rallos, Traquina and Tran have, in fact, been exhausted or not,

16  defendants' motion to dismiss plaintiff's claims against these defendants must be denied based

17  on the Ninth Circuit's holding in Rhodes.  The court turns now to defendant Basi's motion for

18  summary judgment.

19  III.  Motion for Summary Judgment

20         Defendant Basi moves for summary judgment on the grounds that plaintiff has

21  failed to adduce evidence demonstrating that defendant Basi was deliberately indifferent to

22

23         [3]  Plaintiff suffered from "painful bipartite patella, left knee."  (Dkt. No. 72-8, Ex. H.)
    Plaintiff explained his patella cup was broken in two parts, requiring surgery to insert screws to
    enable the patella cup to heal.  (Pl.'s Dep. at 55.)  The surgical report noted the risks of this

24  procedure:  "neurovascular injury, infection, persistent pain, postoperative stiffness, and possible
    need for bipartite patella excision should open reduction and internal fixation fail."  (Dkt. No.

25  72-8, Ex. H.)  The doctor explained to plaintiff that after two and a half to three years, a second
    surgery could be performed to remove the screws.  (Pl.'s Dep. at 56.)  Plaintiff had the second

26  surgery in July or August of 2010.  (Id. at 59.)

1  plaintiff's serious medical needs or that there remains a triable issue of material fact.

2          A.  <u>Legal Standard for Summary Judgment</u>

3          Summary judgment is appropriate when it is demonstrated that the standard set

4  forth in Federal Rule of Civil procedure 56 is met.  "The court shall grant summary judgment if

5  the movant shows that there is no genuine dispute as to any material fact and the movant is

6  entitled to judgment as a matter of law. " Fed. R. Civ. P. 56(a).[4]

7          Under summary judgment practice, the moving party always bears
        the initial responsibility of informing the district court of the basis

8          for its motion, and identifying those portions of "the pleadings,
        depositions, answers to interrogatories, and admissions on file,

9          together with the affidavits, if any," which it believes demonstrate
        the absence of a genuine issue of material fact.

10

11  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P.

12  56(c)).  "Where the nonmoving party bears the burden of proof at trial, the moving party need

13  only prove that there is an absence of evidence to support the non-moving party's case."  <u>Nursing</u>

14  <u>Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.)</u>, 627 F.3d 376,

15  387 (9th Cir. 2010) (citing <u>Celotex Corp.</u>, 477 U.S. at 325); <u>see also</u> Fed. R. Civ. P. 56 advisory

16  committee's notes to 2010 amendments (recognizing that "a party who does not have the trial

17  burden of production may rely on a showing that a party who does have the trial burden cannot

18  produce admissible evidence to carry its burden as to the fact").  Indeed, summary judgment

19  should be entered, after adequate time for discovery and upon motion, against a party who fails to

20  make a showing sufficient to establish the existence of an element essential to that party's case,

21  and on which that party will bear the burden of proof at trial.  <u>Celotex Corp.</u>, 477 U.S. at 322.

22  "[A] complete failure of proof concerning an essential element of the nonmoving party's case

23  necessarily renders all other facts immaterial."  <u>Id</u>. at 323.

24

---

25       [4]  Federal Rule of Civil Procedure 56 was revised and rearranged effective December 10,
2010.  However, as stated in the Advisory Committee Notes to the 2010 Amendments to Rule

26  56, "[t]he standard for granting summary judgment remains unchanged."

1        Consequently, if the moving party meets its initial responsibility, the burden then

2   shifts to the opposing party to establish that a genuine issue as to any material fact actually exists.

3   See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting

4   to establish the existence of such a factual dispute, the opposing party may not rely upon the

5   allegations or denials of its pleadings, but is required to tender evidence of specific facts in the

6   form of affidavits, and/or admissible discovery material in support of its contention that such a

7   dispute exists.  See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.  The opposing party

8   must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

9   of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

10  (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

11  1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

12  return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,

13  1436 (9th Cir. 1987).

14        In the endeavor to establish the existence of a factual dispute, the opposing party

15  need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

16  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

17  versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 630.  Thus, the "purpose of summary

18  judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

19  genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

20  committee's note on 1963 amendments).

21        In resolving a summary judgment motion, the court examines the pleadings,

22  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

23  any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

24  477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

25  court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

26  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

1  produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

2  Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

3  1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

4  show that there is some metaphysical doubt as to the material facts. . . . Where the record taken

5  as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

6  'genuine issue for trial.'"  Matsushita, 475 U.S. at 586 (citation omitted).

7           By order filed May 5, 2009, the court advised plaintiff of the requirements for

8  opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure.  (Dkt.

9  No. 48); see Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v.

10 Eikenberry, 849 F.2d 409 (9th Cir. 1988).

11          B.  Undisputed Facts

12          The following undisputed facts ("UDF") are either not disputed by plaintiff or

13 defendant Basi, or, following the court's review of the evidence submitted, have been deemed

14 undisputed:

15          1.  Plaintiff has been incarcerated at California State Prison – Solano ("CSP-

16 SOL") since June 22, 2004.

17          2.  Defendant Dr. Amrik Basi is a family practitioner who provided medical care

18 and treatment to prisoners, including plaintiff, at CSP-SOL, from November 2006 to December

19 2008.

20          3.  Plaintiff's TAC alleges that defendant Basi was deliberately indifferent to

21 plaintiff's serious medical needs in that he refused to provide basic after-care for plaintiff's left

22 knee surgery, which caused plaintiff low back pain and mobility impairments.  (TAC at 2-3, 4;

23 Pl.'s Dep. at 66-67; 71-72.)

24          4.  Plaintiff alleges defendant Basi improperly reduced plaintiff's pain medication,

25 failed to order an MRI of plaintiff's back, and failed to address plaintiff's right thigh pain.  (Pl.'s

26 Dep. at 224, 228.)

5.  Plaintiff's claims against defendant Basi are limited to plaintiff's allegations that defendant Basi was deliberately indifferent to plaintiff's serious medical needs in violation of the Eighth Amendment.  (Dkt. No. 46; 59.)

6.  Plaintiff underwent knee surgery on August 17, 2007.  (TAC at 5.)

7.  On January 12, 2008, defendant Basi examined plaintiff and recommended straight leg raises and isometric quadriceps exercises to assist plaintiff with knee pain. Defendant Basi ordered an x-ray of the lumbar spine to evaluate plaintiff's back pain, prescribed Naproxen and Robaxin for pain, and ordered a thirty-day follow-up visit.  (Dkt. No. 68-11 at 3; Dkt. No. 68-4, Ex. D-1 at 278.)

8.  On February 5, 2008, defendant Basi re-examined plaintiff, noting a history of elevated lipids, gastroesophageal reflux disease ("GERD"), chondromalacia patellae, and acne. Defendant Basi ordered physical therapy services based on plaintiff's complaints of left knee pain.  Defendant Basi prescribed Tylenol #3 b.i.d., Ultram 150 mg. b.i.d., Naproxen, and Methocarbamol 750 mg. b.i.d. for pain, and Colace and fiber for constipation.  (Dkt. No. 68-11 at 3-4; Dkt. No. 68-4, Ex. E at 6, 292, 400.)

9.  On February 22, 2008, during an examination, plaintiff demanded an MRI, physical therapy, and increased pain medication.  Plaintiff also complained of bilateral numbness in the buttocks.  Defendant Basi ordered physical therapy for mechanical lower back pain. Defendant Basi renewed plaintiff's prescriptions for Ultram 150 mg b.i.d., Tylenol #3 b.i.d., and Robaxin 750 mg b.i.d., and again ordered physical therapy.  Plaintiff was scheduled to return to the clinic in 90 days.  (Dkt. No. 68-11 at 4; Dkt. No. 68-4, Ex. E at 7, 289, 399.)

10.  On April 2, 2008, plaintiff requested that his pain medication be increased. Plaintiff was receiving Ultram and Tylenol #3.  Plaintiff's treating physicians, who were familiar with plaintiff's medical history, determined that plaintiff's current pain medications were appropriate.  (Dkt. No. 68-4, Ex. D-2.)

11.  On October 6, 2008, plaintiff underwent a CT scan of his left knee, which

9

1  revealed evidence of an old fracture of the kneecap with internal fixation and a moderate amount

2  of osteoarthritis.  Additional surgery on the right knee was not medically indicated at that time.

3  (Dkt. No. 68-4, Ex. D-4; D-5.)

4          12.  On October 9, 2008, defendant Basi re-examined plaintiff for left knee pain,

5  chronic low back pain, left ankle pain, T11-T12 disc protrusion, a possible perforated eardrum,

6  decreased hearing, right thigh pain, and rectal bleeding.  The examination revealed near normal

7  range of motion in plaintiff's back, no radicular pain, and negative straight leg raises.  Plaintiff's

8  left knee had normal range of motion and no swelling with tenderness to palpation over the

9  patella.  Plaintiff had no evidence of a perforated eardrum.  Defendant Basi determined that the

10 objective data did not support an ADA disability.  Defendant Basi continued plaintiff on

11 nonsteroidal anti-inflammatory medication, Tylenol #3 and Ultram.  (Dkt. No. 68-11 at 5-6; Dkt.

12 No. 68-4, Ex. E at 4, 89, 174, 324, 450-51; Ex. D-3, Ex. D-5.)

13         13.  On October 9, 2008, defendant Basi made a referral for plaintiff to

14 orthopedics concerning plaintiff's right thigh pain.  Although a June 9, 2006 MRI of the right

15 thigh was normal, defendant Basi asked for re-evaluation by an orthopedic surgeon.  (Dkt. No.

16 68-4, Ex. E at 4, 450-51; Ex. D-3.)

17         14.  On October 9, 2008, defendant Basi referred plaintiff to a gastroenterologist

18 because plaintiff's stool was guaiac positive (indicating blood in the stool), and plaintiff had been

19 diagnosed by Dr. Vaziri of Queen of the Valley Hospital with mild gastritis and internal

20 hemorrhoids.  The hemoglobin and hematrocrit were stable, indicating no serious or severe

21 bleeding.  Defendant Basi requested a consultation for possible sclerotherapy of internal

22 hemorrhoids.  (Dkt. No. 68-11 at 5-6; Dkt. No. 68-4, Ex. E at 4, 450-51; Ex. D-3.)

23         15.  Plaintiff's last visit with defendant Basi was on October 9, 2008.  Plaintiff

24 was instructed to return to the clinic in 60 days.  (Dkt. No. 68-11 at 5; Dkt. No. 68-4, Ex. D-3,

25 Ex. E.)

26         16.  Defendant Basi referred plaintiff to a neurologist for follow-up care for

10

plaintiff's back pain.  (Pl.'s Dep. at 170.)

17.  Defendant Basi prescribed plaintiff pain medication and muscle relaxants, and referred plaintiff to physical therapy for his back pain.  (Pl.'s Dep. at 173-74.)

18.  Plaintiff confirmed that physical therapy improved and alleviated plaintiff's back pain.  (Pl.'s Dep. at 182, 220.)

19.  Defendant Basi examined plaintiff's thigh and plaintiff thought defendant Basi ordered an MRI of the right thigh.  (Pl.'s Dep. at 224, 227-28.)  Plaintiff was not given the results of an MRI of his right thigh.  (Pl.'s Dep. at 227.)

20.  Defendant Basi's care and treatment of plaintiff was medically appropriate and complied with the applicable standard of care in all respects.  (Dkt. No. 68-11 at 6.)

21.  At no time did plaintiff present to defendant Basi with acute or emergent symptoms that would require immediate medical intervention, but rather presented for management and monitoring of chronic or sub-acute conditions, for which appropriate care was rendered.  (Dkt. No. 68-11 at 6.)

22.  Defendant Basi took an appropriate history and performed a proper physical examination at each visit with plaintiff.  (Dkt. No. 68-11 at 6.)

23.  At no time were plaintiff's complaints not appropriately and reasonably addressed.  (Dkt. No. 68-11 at 6.)

24.  The standard of care did not require that defendant Basi recommend knee surgery, surgery to repair the right thigh tear, or increase plaintiff's pain medication.  (Dkt. No. 68-11 at 6.)

25.  The standard of care did not require defendant Basi to order treatment for hemorrhoids beyond that which was ordered.  (Dkt. No. 68-11 at 6.)

26.  The Colace and fiber ordered by defendant Basi were medically appropriate, as they treated plaintiff's constipation and hemorrhoids.  (Dkt. No. 68-11 at 6.)

27.  Defendant Basi ordered a referral to the Gastroenterology Department for

1   treatment of plaintiff's mild gastritis and internal hemorrhoids.  (Dkt. No. 68-11 at 6.)

2          28.  The standard of care did not require that defendant Basi order additional tests,

3   prescribe different medications, or arrange for additional surgery to treat plaintiff's hemorrhoids.

4   (Dkt. No. 68-11 at 6.)

5          29.  Plaintiff's hemorrhoids were stable during the time defendant Basi treated

6   plaintiff.  Plaintiff's hemorrhoids were not dangerous or life-threatening during the time

7   defendant Basi treated plaintiff.  (Dkt. No. 68-11 at 6.)

8          30.  At no time did defendant Basi ignore plaintiff's knee pain, back pain, thigh

9   pain, or hemorrhoids, or act with deliberate indifference.  Defendant Basi addressed the medical

10  problems at each visit and ordered medications and physical therapy to treat the reported

11  ailments.  (Dkt. No. 68-11 at 7.)

12          C.  Eighth Amendment Standards

13          In order to state a § 1983 claim for violation of the Eighth Amendment based on

14  inadequate medical care, plaintiff must allege "acts or omissions sufficiently harmful to evidence

15  deliberate indifference to serious medical needs."  Estelle v. Gamble, 429 U.S. 97, 106 (1976).

16  To prevail, plaintiff must show both that his medical needs were objectively serious, and that

17  defendants possessed a sufficiently culpable state of mind.  Wilson v. Seiter, 501 U.S. 294, 299

18  (1991); McKinney v. Anderson, 959 F.2d 853 (9th Cir. 1992) (on remand).  The requisite state of

19  mind for a medical claim is "deliberate indifference."  Hudson v. McMillian, 503 U.S. 1, 6

20  (1992).

21          A serious medical need exists if the failure to treat a prisoner's condition could

22  result in further significant injury or the unnecessary and wanton infliction of pain.  Indications

23  that a prisoner has a serious need for medical treatment are the following:  the existence of an

24  injury that a reasonable doctor or patient would find important and worthy of comment or

25  treatment; the presence of a medical condition that significantly affects an individual's daily

26  activities; or the existence of chronic and substantial pain.  See, e.g., Wood v. Housewright,

900 F. 2d 1332, 1337-41 (9th Cir. 1990) (citing cases); <u>Hunt v. Dental Dept.</u>, 865 F.2d 198, 200-01 (9th Cir. 1989); <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1059-60 (9th Cir. 1992), <u>overruled</u> <u>on</u> <u>other grounds</u>, <u>WMX Technologies v. Miller</u>, 104 F.3d 1133 (9th Cir. 1997) (en banc).

In <u>Farmer v. Brennan</u>, 511 U.S. 825 (1994), the Supreme Court defined a very strict standard which a plaintiff must meet in order to establish "deliberate indifference." Negligence is insufficient.  <u>Farmer</u>, 511 U.S. at 835.  Even civil recklessness (failure to act in the face of an unjustifiably high risk of harm which is so obvious that it should be known) is insufficient.  <u>Id</u>. at 836-37.  Similarly, it is not sufficient that a reasonable person would have known of the risk or that a defendant should have known of the risk.  <u>Id</u>. at 842.

"Deliberate indifference" is nothing less than recklessness in the criminal sense – subjective standard – disregard of a risk of harm of which the actor is <u>actually</u> aware.  <u>Id</u>. at 837-42.  "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  <u>Id</u>. at 837.  Thus, a defendant is liable if he knows that plaintiff faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."  <u>Id</u>. at 847.  "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm."  <u>Id</u>. at 842.  If the risk was obvious, the trier of fact may infer that a defendant knew of the risk.  <u>Id</u>. at 840-42.  However, obviousness <u>per</u> <u>se</u> will not impart knowledge as a matter of law.

Also significant to the analysis is the well established principle that mere differences of opinion concerning the appropriate treatment cannot be the basis of an Eighth Amendment violation.  <u>Jackson v. McIntosh</u>, 90 F.3d 330, 332 (9th Cir. 1996); <u>Franklin v. Oregon</u>, 662 F.2d 1337, 1344 (9th Cir. 1981).  However, a physician need not fail to treat an inmate altogether in order to violate that inmate's Eighth Amendment rights.  <u>Ortiz v. City of Imperial</u>, 884 F.2d 1312, 1314 (9th Cir. 1989).  A failure to competently treat a serious medical condition, even if some treatment is prescribed, may constitute deliberate indifference in a particular case.  <u>Id</u>.

1    Additionally, mere delay in medical treatment without more is insufficient to state

2  a claim of deliberate medical indifference.  Shapley v. Nevada Bd. of State Prison Com'rs,

3  766 F.2d 404, 407 (9th Cir. 1985).  Although the delay in medical treatment must be harmful,

4  there is no requirement that the delay cause "substantial" harm.  McGuckin, 974 F.2d at 1060,

5  citing Wood, 900 F.2d at 1339-40.  A finding that an inmate was seriously harmed by the

6  defendant's action or inaction tends to provide additional support for a claim of deliberate

7  indifference; however, it does not end the inquiry.  McGuckin, 974 F.2d at 1060.  In summary,

8  "the more serious the medical needs of the prisoner, and the more unwarranted the defendant's

9  actions in light of those needs, the more likely it is that a plaintiff has established deliberate

10 indifference on the part of the defendant."  Id. at 1061.

11    D.  Analysis

12    Defendant Basi contends that there are no disputed issues of material fact because

13 plaintiff has failed to present any admissible evidence to support plaintiff's opinion that

14 defendant Basi's care and treatment fell below the standard of care or amounted to deliberate

15 indifference to plaintiff's serious medical needs.

16    In his verified opposition,[5] plaintiff claims defendant Basi prescribed medical

17 treatments only after repeated verbal and administrative appeals by plaintiff.  (Dkt. No. 74-2 at

18 1.)  Plaintiff states that he suffered complications due to lack of proper medical care, and that

19 defendant Basi "maliciously delayed" plaintiff's follow-up care.  (Id.)  Specifically, plaintiff

20 states defendant Basi did not follow-up with proper medical care after a rectal exam produced a

21 bloody finger.  (Dkt. No. 74-2 at 2.)  Plaintiff claims his back injuries and other complications

22 derived from being unable to walk properly after plaintiff was allegedly denied proper follow-up

23

24    [5] Plaintiff filed five pages in opposition to the pending motions.  Appended to his two-page opposition are two documents.  The first document is entitled "Declaration in Opposition to
25 Defendants' Motion for Summary Judgment," signed under penalty of perjury.  (Dkt. No. 74-1.)
The second document is entitled "Plaintiff's Separate Statement of Disputed Material Facts. . .,"
26 also signed under penalty of perjury.  (Dkt. No. 74-2.)

care following left knee surgery.  (Id.)  Plaintiff provided no declarations, other than his own

verified opposition, and produced no medical records or other evidence with his opposition.

Plaintiff failed to cite to specific exhibits appended to the unverified TAC or the exhibits

submitted on September 22, 2008.  (Dkt. Nos. 42, 44.)  In the context of plaintiff's "repeated

verbal and 602 administrative appeals," plaintiff states his complaints were from April 7, 2008,

to August 6, 2008.  (Dkt. No. 74-2 at 2.)  Plaintiff also states he sought "basic proper medical

care" from defendant Basi through an administrative appeal process four months after plaintiff's

left knee surgery.  (Dkt. No. 74-2 at 1.)

i. Plaintiff's Documentary Evidence

Plaintiff submitted two inmate appeal forms that mention defendant Basi.  (Dkt.

No. 44.)  The first, dated January 1, 2008, initially alleges plaintiff was triaged but not seen by

any doctors from November 2007, to January 1, 2008.  (Dkt. No. 44 at 1.)  Plaintiff raised no

specific complaint as to defendant Basi in the initial appeal.  However, at the formal level,

plaintiff stated that he was dissatisfied with defendant Basi's treatment on February 4, 2008, and

February 25, 2008.[6]  Plaintiff complained that defendant Basi changed plaintiff's pain

medications and refused to discuss plaintiff's symptoms.  (Dkt. No. 44 at 1.)

First, plaintiff has failed to demonstrate defendant Basi was aware of this appeal,

particularly since plaintiff did not mention defendant Basi in the initial grievance.  Second,

plaintiff has failed to demonstrate that defendant Basi's medical treatment provided to plaintiff

on February 5, 2008, and February 22, 2008, fell below the standard of care, or that defendant

Basi was deliberately indifferent to plaintiff's serious medical needs.  It appears plaintiff had a

difference of opinion as to what medical treatment he should receive.  Differences of opinion

concerning appropriate treatment are insufficient to demonstrate an Eighth Amendment violation.

---

[6]  It appears plaintiff's reference to February 25, 2008, may have been a typographical error.  Defendant Basi treated plaintiff on February 22, 2008.  (Dkt. No. 68-4, Ex. E at 7, 289, 399.)

1 | Jackson v. McIntosh, 90 F.3d at 332.

2 |         The second inmate appeal, signed January 16, 2008, specifically alleges defendant

3 | Basi refused to treat plaintiff's lower back pain and numbness in plaintiff's buttocks.  (Dkt. No.

4 | 44 at 8.)  Plaintiff stated defendant Basi ordered x-rays, but allegedly told plaintiff he would only

5 | receive physical therapy for his left knee.  (Id.)  Plaintiff sought an MRI of his lower back and an

6 | increase in his Tylenol #3 prescription.  (Id.)  The second inmate appeal was reviewed by

7 | defendant Basi at the informal level of review.  Defendant Basi partially granted plaintiff's

8 | appeal and added:

9 |         I reviewed your chart along with x-ray today[.]  [N]o evidence on
   |         x-ray to support degenerative disc disease.  All disc heights are
10 |         normal.  On physical exam, no evidence of disc disease.  I am
   |         sending [plaintiff] to PT for back strengthening.

11 |

12 | (Dkt. No. 44 at 8.)

13 |         This appeal reflects that defendant Basi treated plaintiff's back complaints by

14 | ordering an x-ray of plaintiff's back.  When the x-ray failed to demonstrate plaintiff suffered

15 | from disc disease, defendant Basi sent plaintiff to physical therapy for back strengthening.

16 | Defendant Basi has provided evidence that this treatment was appropriate and within the standard

17 | of care.  (UDF 20.)  Plaintiff has failed to rebut this evidence.

18 |         These two appeal forms, taken together, do not demonstrate repeated or failed

19 | efforts to obtain medical care from defendant Basi, but rather plaintiff's disagreement with the

20 | care defendant Basi provided.

21 |         Plaintiff has submitted myriad copies of Health Care Services Request Forms

22 | dated from April 24, 2007, to August 6, 2008.  (Dkt. No. 42 & 44.)  The requests dated April 24,

23 | 2007, through August 17, 2007, are not relevant, as plaintiff has limited his claims to events

24 | occurring after his left knee surgery on August 17, 2007.  (Dkt. No. 73 at 34, 35-36, 38-39.)

25 |         Plaintiff specifically attributes health care requests dated August 8, 2007, and

26 | September 24, 2007, to defendant Basi in the TAC, but plaintiff has failed to provide any

1  evidence that defendant Basi was aware of these specific requests.  Plaintiff does not identify to

2  whom he submitted each request, and in the context of the rest of his filings, it appears these

3  forms are, in any event, triaged by a nurse or other staff person prior to referral to a doctor.

4  Plaintiff has failed to demonstrate a link between these requests and defendant Basi.  Title 42

5  U.S.C. § 1983 requires that there be an actual connection or link between the actions of the

6  defendant and the deprivation alleged to have been suffered by plaintiff.  See Monell v.

7  Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).  The

8  remainder of the health care request forms identified by plaintiff suffer from the same defect –

9  plaintiff has demonstrated no link between the requests and defendant Basi's alleged failure to

10  provide adequate medical care.[7]  Therefore, these health care request forms fail to demonstrate

11  defendant Basi was deliberately indifferent to plaintiff's serious medical needs.

12                                    ii.  Specific Allegations

13           Similarly, plaintiff has failed to demonstrate that any of the alleged delays in

14  medical care were harmful.  McGuckin, 974 F.2d at 1060.  With regard to plaintiff's complaints

15  that he failed to receive follow-up medical care following surgery on his left knee on August 17,

16  2007, plaintiff has failed to demonstrate defendant Basi was responsible for providing post-

17  surgical care.  Defendants provided evidence that the earliest date that defendant Basi examined

18  plaintiff was on January 12, 2008.  (UDF 7.)  Plaintiff first mentions defendant Basi in

19  connection with the February 5, 2008 examination.  Therefore, plaintiff has failed to demonstrate

20  defendant Basi was linked to any alleged failure to treat from August 17, 2007, to January 12,

21  2008.

22           Plaintiff has also failed to provide evidence that failure to provide a particular

23  _____

24        [7]  Plaintiff's January 1, 2008 inmate appeal confirms there is no connection between
       defendant Basi and plaintiff's allegations that he received no care despite his requests, because
25     plaintiff states that from November 2007, to January 1, 2008, he was triaged but not seen by any
       doctors.  Therefore, the requests dated from November 2007, to January 1, 2008, are not relevant
26     as to defendant Basi.

treatment by defendant Basi in 2008 caused plaintiff further medical injuries.  Plaintiff alleges in the TAC that the failure to provide basic care after surgery caused plaintiff to suffer lower back pain and mobility impairments.  Defendants have provided evidence that defendant Basi examined plaintiff for these complaints and ordered appropriate treatment.  (UDF 7, 8, 9, 11, 12 & 13.)  Defendant Basi's treatment included referral to a neurologist for follow-up care, physical therapy, and prescriptions for pain medication and muscle relaxants.  (UDF 16, 17.)  Plaintiff has failed to rebut this evidence.

Plaintiff's allegations that defendant Basi failed to properly prescribe pain medications, failed to treat plaintiff's right thigh, or eardrum, are similarly unavailing.  Defendants have provided evidence that defendant Basi examined plaintiff for these complaints and ordered appropriate treatment.  (UDF 10, 12, 13.)  Defendant Basi's treatment included prescriptions for pain medications and a referral to orthopedics for evaluation of plaintiff's right thigh pain.  (Id.)  Plaintiff has failed to rebut this evidence.

In the TAC, it appears plaintiff's complaints concerning treatment for rectal bleeding were more directed to defendants Tran and Rallos.  However, in his opposition, plaintiff contended defendant Basi did not provide proper medical care after a rectal exam produced a bloody finger.  Plaintiff did not identify the date of the rectal exam at issue.  Defendants have provided evidence that defendant Basi appropriately treated plaintiff for constipation on February 5, 2008, with a prescription for Colace and fiber.  (UDF 8, 26.)  Plaintiff has provided no evidence that defendant Basi's treatment for constipation was inappropriate or outside the standard of care.

Plaintiff provided two health care request forms bearing complaints of rectal bleeding.  In the first request, dated June 14, 2008, plaintiff claimed he had rectal bleeding for eight days despite religiously taking his prescribed medications.  (Dkt. No. 42 at 31.)  In the second request, dated August 6, 2008, plaintiff claimed he was still bleeding rectally and had a foul-smelling discharge.  (Dkt. No. 42 at 33.)  Plaintiff stated: "I need to have my internal

18

hemorrhoids 'banded'"!!!  This is a follow-up ASAP." (Id.)  However, plaintiff failed to provide

any medical records or other evidence demonstrating defendant Basi examined plaintiff in June

or August of 2008 for complaints of rectal bleeding.  Defendants have provided evidence that

defendant Basi examined plaintiff on October 9, 2008, for complaints of rectal bleeding.  On that

same date, defendant Basi referred plaintiff to a gastroenterologist, and requested a consultation

for possible sclerotherapy of internal hemorrhoids.  (UDF 12, 14.)  Defendant Basi has provided

evidence that his treatment and referral to a specialist were appropriate and met the standard of

care.  (UDF 20, 25, 26-29.)  Plaintiff has failed to rebut this evidence.  Plaintiff has also failed to

demonstrate defendant Basi was connected, in any way, to the alleged delay in treatment plaintiff

received for his rectal bleeding.  Plaintiff has also failed to adduce evidence that the standard of

care required different treatment when a rectal exam produced a bloody finger.

In summary, defendants have submitted evidence that defendant Basi provided

appropriate medical care that met or exceeded the standard of care for the medical community.

Plaintiff has provided no probative evidence to the contrary.  See Hutchinson v. United States,

838 F.2d 390 (9th Cir. 1988) (in medical malpractice action, when defendant supports motion for

summary judgment with declarations of expert, and conduct under the circumstances is not

within the common knowledge of laymen, plaintiff who has presented no expert evidence

concerning required standard of care has failed to make sufficient showing that there are genuine

issues for trial).

E.  Conclusion

For all of the foregoing reasons, plaintiff has failed to demonstrate that there is a

disputed material fact at issue with regard to medical care provided by defendant Basi.

Accordingly, defendant Basi is entitled to summary judgment.

IV.  Qualified Immunity

Because the court has found plaintiff's constitutional rights have not been

violated, the court need not address defendant Basi's arguments for qualified immunity.

V.  Recommendations

Accordingly, IT IS HEREBY RECOMMENDED that:

1.  Defendants' July 22, 2010 motion to dismiss plaintiff's claims as unexhausted (dkt. no. 72) be denied; and

2.  Defendant Basi's May 7, 2010 motion for summary judgment (dkt no. 68) be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  January 28, 2011

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

villa2706.msj1